# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **CARL S. SUTHERLAND,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10CV1611MLM** |
| | ) | |
| **CHRIS KOSTER,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Carl S. Sutherland ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 8. Petitioner filed a Reply to Respondent's Response. Doc.12. Also before the court are two Motions filed by Petitioner. Docs. 10, 14. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 9.

## I.
## BACKGROUND

In Count I, of an Information in Lieu of Indictment, Petitioner was charged with robbery in the first degree, in violation of Mo. Rev. Stat. § 569.020, in that, on Sunday, September 22, 2202, at about 6:15 a.m., Petitioner and two others, acting together, forcibly stole U.S. currency in the possession of Surendra Chowdary, and, in the course thereof, Petitioner displayed and threatened use of what appeared to be a deadly weapon. In Count II, Petitioner was charged with armed criminal

---

[1] As Petitioner is currently incarcerated at the Northeast Correctional Complex, in Mountain City, Tennessee, Chris Koster, the Missouri Attorney General is properly named as Respondent in this matter in which Petitioner challenges Missouri convictions.

action, in violation of Mo. Rev. Stat. § 571.015, in that he committed the felony described in Count I with and through the use, assistance and aid of a deadly weapon. Resp. Ex. 2 at 17-20.

Petitioner's case was tried in the Circuit Court of St. Louis County, on September 10-11, 2007. The testimony at Petitioner's trial was that on September 22, 2002, Surendra Chowdary was working the third shift at the Travelodge on National Bridge Road in Berkley; that at about 6 a.m., Mr. Chowdary was setting up donuts and coffee in the lobby when an individual, later identified as Petitioner, approached him; that Petitioner inquired about how much a room would be at the hotel; that Mr. Chowdary told Petitioner the room rate; that Petitioner then said he would have to check with his friends and he would come back; and that Petitioner left. Resp. Ex., Trial Transcript ("Tr.) at 116-18, 127-28.

Further, the testimony at Petitioner's trial was that, shortly thereafter, Petitioner came back inside the hotel with two other individuals; that, when Petitioner returned, Mr. Chowdary was helping other hotel guests; that Petitioner and the two other individuals who entered with him waited for Mr Chowdary; that Mr. Chowdary recognized Petitioner from the first interaction; that when the other people left, Mr. Chowdary asked Petitioner whether he had decided about the room; that Petitioner then pulled out a black handgun, used "bad language," and pointed the gun at his face; and that Mr. Chowdary stepped back and put his hands up; that while Petitioner kept the gun pointed at Mr. Chowdary, Petitioner's two companions jumped over the counter; that they ordered Mr. Chowdary to get down on the floor; that Mr. Chowdary got down on the floor and they started hitting him with their fists; that one blow hit Mr. Chowdary below his eye; that the individuals asked where the panic button was located; that, after Mr. Chowdary showed them where the panic button was located, they made sure Mr. Chowdary could not access it; that the individuals asked where the cash drawer was located; that Mr. Chowdary told them that it was on the right-hand side of the front desk; that

Petitioner and one individual started searching for money near the front desk but could not open the cash drawer; that the individuals asked Mr. Chowdary to push a button to open the cash drawer; that the individuals then demanded to know where the surveillance videotape was located; that Petitioner then hit victim with the gun; that Mr. Chowdary stated it might be in the back office; that one person grabbed Mr. Chowdary's hands and another person grabbed his legs and dragged him to the back office; that the individuals asked for the keys to the back office; that Mr. Chowdary told them he had no keys; that they searched Mr. Chowdary's pockets and found keys related to the coffee machine and Mr. Chowdary's wallet and cell phone; that the individuals then broke down the door to the back office and searched the room; they then asked Mr. Chowdary to show them the surveillance tape; they tied Mr. Chowdary's feet with his shoelaces and his hands with a wire; Petitioner and his companions took the safe; the three individuals left Mr. Chowdary tied up on the floor; the owner of the hotel came in around seven a.m. and found Mr. Chowdary still tied up on the floor; the hotel owner called police; that, after he was freed, Mr. Chowdary observed that the cash drawer, which had at least $100 in it, was empty; that police contacted Mr. Chowdary to identify some photographs; that, after being shown a photo lineup, Mr. Chowdary identified number five, Petitioner, as one of the suspects; that Mr. Chowdary was one hundred percent positive of the identification; and that Mr. Chowdary stated he would remember Petitioner's face throughout his life. Tr. 117-26, 129-34, 142-489

At trial, Thomas Krull, the fingerprint examiner for St. Louis County Police Department, was called to testify for the defense. Mr. Krull testified that, of the five useable prints lifted from the robbery, none of them matched Petitioner; that he usually identifies twenty percent of the prints submitted; that is possible for a person to touch a surface and not leave a fingerprint; and that there were no prints from the victim either. Tr. 174-180.

Petitioner was found guilty as charged. The court sentenced Petitioner to concurrent terms of twenty-five years for Counts I and II. Resp. Ex. 1 at 202-203, Ex. 2 at 55-57. Petitioner filed a direct appeal on May 22, 2008. Resp. Ex. 3. By decision, dated October 22, 2008, the Missouri appellate court affirmed Petitioner's conviction. Resp. Ex. 5.

Petitioner filed a pro se post-conviction relief motion. Resp. Ex. 6 at 2-16. Counsel was appointed and filed an amended motion. Resp. Ex. 6 at 27-41. The motion court denied Petitioner's post-conviction relief motion. Resp. Ex. 6 at 43-45. Petitioner filed an appeal of the decision of the motion court. Resp. Ex. 7. By decision, dated May 18, 2010, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. 9.

On August 30, 2010, Petitioner filed his § 2254 Petition in which he raises the following issues:

**(1)** The trial court erred by not excluding the videotape of the robbery based on insufficient foundation;

**(2)** Petitioner received ineffective assistance of counsel because counsel did not interview or call as witnesses Petitioner's co-defendants; and

**(3)** Petitioner received ineffective assistance of counsel because counsel failed to call Officer Daniel Paulino as a witness.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the

Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially

indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-13.

<u>Williams</u> further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. <u>See id.</u> at 411. "'Rather [the] application [by the state court] must also be unreasonable.'" <u>Copeland v. Washington</u>, 232 F.3d 969, 973 (8th Cir. 2000) (quoting <u>Williams</u>, 529 U.S. at 411). <u>See also Siers v. Weber</u>, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in <u>Williams</u> that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. <u>See also Price v. Vincent</u>, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." <u>Williams</u>, 529 U.S. at 413. <u>See also Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in <u>Penry</u> that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that

application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time.

Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. <u>Wright v. West</u>, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 644 (2004)**.**

## III.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. <u>Sweet v. Delo</u>, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." <u>Id.</u> at 1151 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim."<u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" <u>Id.</u> at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." <u>Id</u>. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. <u>Dretke v. Haley</u>, 541 U.S. 386, 388-89 (2004). <u>See also</u> <u>Coleman</u>, 501 U.S. at 750 (holding that a state habeas petitioner can

overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; <u>Battle v. Delo</u>, 19 F.3d 1547, 1552 (8th Cir. 1994). Petitioner in the matter under consideration raised the issues which he raises before this court before the Missouri appellate court. As such, the court finds that he has not procedurally defaulted these issues and that he has exhausted his State remedies.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Petitioner filed his § 2254 Petition within this limitation period. As such, the court finds that his § 2254 Petition is timely filed.

## IV.
## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." <u>Auman v. United States</u>, 67 F.3d 157, 162 (8th Cir. 1995) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. <u>Id.</u> at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 669. The court is not required to "address both

components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." <u>Id.</u> at 697.

Additionally, the court notes that the Court stated in <u>Strickland</u>, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has emphasized that the standard to be applied by a federal court when reviewing a <u>Strickland</u> claim of a state prisoner pursuant to § 2254 is "doubly deferential judicial review." <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009). The Court further explained that "because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id.</u> (citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

**V.**
**DISCUSSION**

**Ground 1 - The Trial Court Erred by Not Excluding the Videotape of the Robbery Based on Insufficient Foundation:**

In support of Ground 1, Petitioner contends that there was insufficient foundation for admission of the videotape. He further argues that Mr. Chowdary did not actually observe what happened; that Mr. Chowdary's testimony could not establish the authenticity of the videotape; and that, therefore, the admission of the videotape deprived Petitioner of due process and a fair trial. Doc. 12 at 3-6. Additionally, Petitioner argues that the decision of the Missouri appellate court is contrary to and an unreasonable application of federal law because the Missouri appellate court held that "even if the clerk had his eyes closed he was able to discern events around him," and because the court "believe[d] that to 'discern', is the same as 'to observe,'" when these words have different meanings. Doc. 12 at 3-5.

The hotel had video surveillance. At trial, the State offered the digital video of the robbery as an exhibit during Mr. Chowdary's testimony. Regarding the video, Mr. Chowdary testified that he knew there was video surveillance at the hotel; that he knew it was twenty-four hours a day, seven days a week; that he preferred to work the night shift because of the video surveillance; that he knew there were several cameras; that, prior to his testifying, he viewed the digital video; that the video was an accurate depiction of what happened at the hotel during the robbery; that there were no alterations or additions made to the video; and that, even though he viewed the video, he had his own memory of what transpired. Tr. 134-39. Defense counsel objected, stating that a proper foundation had not been laid for the exhibit. Defense counsel further argued that the Mr. Chowdary did not know the workings of the video surveillance equipment and could not tell whether it had been changed or altered. The trial court overruled counsel's objection. The prosecutor then questioned Mr.

11

Chowdary about the exhibit and Mr. Chowdary testified that he had viewed the video and it accurately depicted what happened during the robbery. Tr. 138-39. The trial court then admitted the exhibit.

Upon addressing the issue of Petitioner's Ground 1, the Missouri appellate court held:[2]

> The same principals that govern the foundation for still photographs apply to the admission of motion pictures or videotapes. State v. Powers, 148 S.W.3d 830, 832 (Mo. App. E.D. 1995). "The party offering a videotape in evidence must show that it is an accurate and faithful representation of what it purports to show." Phiropoulous v. State, 908 S.W.3d 712, 714 (Mo. App. E.D. 1995). "The foundation may be established by any witness who is familiar with the subject matter of the tape and is competent to testify from personal observation." Id. The trial judge has wide discretion in deciding whether to admit videotapes and motion pictures. Gomez v. Construction Design, Inc., 126 S.W.3d 366, 373-374 (Mo. 2004).

> Despite the fact that Chowdary closed his eyes during certain times of the robbery, he nonetheless was able to completely testify from personal observation. Accordingly, Chowdary's testimony served as sufficient foundation for the admission of the surveillance videotape. The evidence shows that Chowdary was the customer service representative and was the victim of the robbery. Chowdary knew there was video surveillance in the hotel and knew it ran twenty-four hours a day, seven days a week. Chowdary testified that he had seen the videotape, that it showed exactly what happened, that there had not been any alteration or additions, and the CD made from that surveillance tape accurately depicted what had occurred. Despite having seen the videotape, Chowdary testified that he had his own memory of what occurred. Sutherland contends that because Chowdary had his eyes closed during periods of the

---

[2]     In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.2003), cert. denied, 540 U.S. 1059 (2003). The law is clear that factual findings by state trial and appellate courts shall be presumed to be correct unless the federal court concludes that the state court findings are an unreasonable application of the facts in light of the evidence presented. See id. Additionally, the Eighth Circuit has held that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 866 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also, Laws v. Armontrout, 863 F.2d 1377 (8th Cir. 1988); Brown v. Lockhart, 781 F.2d 654, 658 (8th Cir. 1986). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989).

robbery, there was no way of knowing whether the videotape had been altered. We disagree. Chowdary testified that even though he had seen the videotape, he had his own recollection of what happened. The record establishes that Chowdary saw the individuals who robbed him and had verbal conversations with the individuals. Chowdary had his eyes open during much of the robbery. He saw Sutherland pull out a gun and point it in his face. He also saw the other two men jump over the counter and order him to get down on the floor.

Even while his eyes were closed, Chowdary was still present and able to discern what was happening to him and around him. For example, he heard the men ask him where the video surveillance tape was located and he felt them push and drag him into the back office. Chowdary's testimony of what happened the morning of the robbery laid a sufficient foundation for admitting the videotape of the robbery, despite Chowdary's eyes being closed at certain times. The trial court did not err in admitting the CD of the video surveillance tape over Sutherland's objection.

Resp. Ex. 5 at 3-4.

First, the United States Supreme Court held, in Estelle v. McGuire, that "'federal habeas corpus relief does not lie for errors of state law'" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and citing Pulley v. Harris, 465 U.S. 37, 41 (1984)). The Court further held that, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )). Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990). Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004) (citing Estelle, 502 U.S. at 68); Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995); Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990). See also Abdi v. Hatch, 450 U.S. 334, 338 (8th Cir. 2006) ("The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it

amounts to a denial of due process.'") (quoting Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir.1988)); Sweet v. Delo, 125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)); Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988) (holding that to justify the grant of habeas corpus, the error must be "so 'gross'... 'conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process"); Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.1984) (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process); Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993) ("Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process.").

The Eighth Circuit held in Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995), in regard to § 2254 review by a federal court:

> [W]e will reverse a state court evidentiary ruling only if the "petitioner ⋯ show[s] that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." [Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987)] (citations omitted). ... Of particular importance is the frequency and pervasiveness of the alleged misconduct in the context of the entire trial, the weight of the evidence supporting guilt, and whether the trial judge gave a cautionary instruction to the jury on how to properly use the testimony elicited. Hamilton, 809 F.2d at 470. Cf. United States v. Jackson, 41 F.3d 1231, 1233 (8th Cir.1994) (detailing this three-part inquiry for claims of prosecutorial misconduct on direct appeal).

Additionally, under federal law, "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." United States v. Macklin, 104 F.3d 1046, 1048 (8th Cir. 1997) (citing United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir.1996); United States v. Just, 74 F.3d 902, 904 (8th Cir.1996)). Even where admission of evidence is erroneous, such admission does not necessarily fatally infect a trial. See e.g., Kuntzelman v. Black, 774 F.2d 291, 292 (8th Cir. 1985) (per curiam) (finding no error of constitutional magnitude in the admission of "particularly gruesome" photographs where the photographs "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent of [the petitioner] in firing the shot that killed [the victim]").

Moreover, the Eighth Circuit has held that "[r]ulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation. '[O]nly the exclusion of critical, reliable and highly probative evidence will violate due process.'" Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000) (quoting Sweet v. Delo, 125 F.3d 1144, 1158 (8th Cir.1997). "The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'" Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (quoting Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir.1988)).

Under federal law, a foundational objection to the admission of a videotape is without merit where testimony indicates that the tapes are "fair and accurate." United States v. Roach, 28 F.3d 729, 733 (8th Cir. 1994). Strict compliance with guidelines for admission of videotapes is not required where a videotape's "substance and the circumstances under which it was obtained were sufficient

proof of its reliability." Id. at 733 n.4 (citing United States v. Clark, 986 F.2d 65, 68 (4th Cir.1993)).

In any case, under federal law, a victim may properly testify that he identified the defendant in

photographs taken by a video camera. See e.g., United States v. Whitfield, 874 F.2d 591, 592 (8th

Cir. 1989). Additionally, videotapes are admissible to show how a crime was committed and to link

a defendant to a crime. See e.g., United States v. Standish, 3 F.3d 1207, 1210 (8th Cir. 1993).

First, in the matter under consideration, Petitioner's Ground 1 raises an issue regarding the

admission of evidence and does not implicate a federal constitutional right as Petitioner has not

established that the outcome of his trial would have been different had the objection been sustained.

Indeed, Mr. Chowdary testified that the events depicted in the videotape were the same as his

recollection of those events. Ground 1, therefore raises a question of State law, which is not

cognizable pursuant to federal habeas review. Estelle, 502 U.S. at 67-68; Evans, 371 F.3d at 443;

Scott, 915 F.2d at 1190-91.

Even assuming, arguendo, that Ground 1 raises an issue of constitutional magnitude, the

decision of the Missouri appellate court regarding the foundation for the admission of the videotape

is not contrary to federal law and is a reasonable application of federal law to the facts of Petitioner's

case. In this regard, the Missouri appellate court considered, among other things, that Mr. Chowdary

was familiar with the subject matter of the videotape; that Mr. Chowdary testified that there had been

no alteration of the videotape; that what was depicted in the videotape was accurate; and that he was

competent to testify about the videotape based on his personal observation. See Roach, 28 F.3d at

733; Whitfield, 874 F.2d at 592; Standish, 3 F.3d at 1210. The court finds, alternatively, that

Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 - Petitioner Received Ineffective Assistance of Counsel Because Counsel Did Not
Interview or Call as Witnesses Petitioner's Co-Defendants:**

In support of Ground 2 Petitioner argues that his co-defendants would have testified that he did not participate in the robbery; that his co-defendants' testimony would have been credible; and that this testimony would have provided Petitioner with a viable defense. Petitioner also contends that the Missouri appellate court relied on cases which did not support its findings. Doc. 12 at 13-16.

Prior to considering Petitioner's claims of ineffective assistance of counsel, the Missouri appellate court specifically considered the two-pronged test for determining whether a defendant received ineffective assistance of counsel as set forth in Strickland, 466 U.S. at 687. Upon doing so, the Missouri appellate court considered that to establish ineffective assistance of counsel, both prongs of this test must be met. Resp. Ex. 9 at 3.

Specifically, upon addressing the issue of Petitioner's Ground 2, the Missouri appellate court held:

> Movant claims that his trial counsel was ineffective for failing to call his co-defendants to testify that he did not participate in the robbery. "To prevail on a claim of ineffective assistance of counsel for failure to call a witness, a defendant must show that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; ;and (4) the witness' testimony would have produced a viable defense." Williams v. State, 168 S.W.3d 433, 441 (Mo. 2005). "Counsel's decision to not call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise." Id.

> Here, the motion court noted that both co-defendants, during their respective guilty plea hearings, stated under oath that they acted with Movant in the armed robbery. As such, the motion court found that their potential new testimony to the contrary, now offered in support of Movant's motion, was refuted by the record and thus, not credible, and therefore would not have provided a viable defense. Movant asserts that the motion court erred by impugning the co-defendants' credibility, suggesting instead that their credibility is greater now that their testimony would not be influenced by pending criminal charges. Movant provides no authority for this theory. Conversely, the State cites long-standing precedent holding that counsel is not ineffective for declining to call co-defendants who implicated the movant through their own sworn admissions of guilt. See Evans v. State, 759 S.W.2d 858 (Mo. App. 1988) ... .

These cases support the motion court's conclusion that Movant's counsel was not ineffective for omitting Movant's co-defendants as witnesses. ... Point denied.

Resp. Ex. 9 at 4-5.

The court has set forth above federal law applicable to claims of ineffective assistance of trial counsel. Also, as discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. Strickland, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. The decision whether to call witnesses may be a matter of trial strategy. Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F.3d 1547,1556 (8th Cir. 1994). "Strategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Strickland, 466 U.S. at 590.

Not only did the Missouri appellate court find that Petitioner did not meet the two-pronged test if Strickland, but the court considered that the decision not to call witnesses is assumed to be reasonable trial strategy. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and is a reasonable interpretation of federal law. See Strickland, 466 U.S. at 590; Hall, 296 F.3d at 694. Moreover, upon considering that Petitioner's co-defendants testified that they committed the robbery with Petitioner,

the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

**Ground 3 - Petitioner Received Ineffective Assistance of Counsel Because Counsel Failed to Call Officer Daniel Paulino as a Witness:**

In support of Ground 3, Petitioner argues that Officer Paulino was the first to arrive at the crime scene; that Mr. Chowdary told him that a man wearing a sweater pulled out a gun and robbed him; that at trial Mr. Chowdary testified that the man who puled the gun wore a white tee shirt; that the impeaching testimony of Officer Paulino "would have been much more probative and far more persuasive to a jury than trial counsel['s] attempt to impeach the victim's inconsistencies." Doc. 12. 16-17. Petitioner further argues that "a time crunch," not trial strategy, was the reason counsel did not interview or call Officer Paulino as a witness and that Officer Paulino's testimony would not have been cumulative. Doc. 12 at 17.

Prior to addressing the issue of Ground 3, as stated above, the Missouri appellate court considered that the two-pronged test of <u>Strickland</u> was applicable to Petitioner's claims of ineffective assistance of counsel. The Missouri appellate court then held:

> Movant claims that Officer Paulino's testimony would have impeached the victim's testimony identifying Movant as the one holding the gun.
>
> As the motion court correctly noted, the mere failure of trial counsel to impeach a witness does not entitle a movant to post-conviction relief. <u>State v. Phillips</u>, 940 S.W.2d 512, 524 (Mo. banc 1997). Rather, a movant must show that impeachment would have provided a defense or changed the outcome of the trial. Id. Movant fails to carry that burden here. The jury not only heard the victim's own testimony identifying Movant as the armed robber but also viewed surveillance video of the incident. "An opinion concerning the identity of a person depicted in a surveillance photograph is only admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant ... than is the jury." <u>State v. Chilton</u>, 119 S.W.3d 176, 178 (Mo. App. 2003). Here, Officer Paulino was no more familiar with Movant than was the jury. Moreover, Movant's counsel did not fail to impeach the victim in the first place. On the contrary, on cross-examination,

counsel emphasized the discrepancy in the victim's description of the robber's clothing. As such, Officer Paulino's testimony would have been cumulative. Counsel is not ineffective for failing to present cumulative evidence. State v. Hall, 982 S.W.2d 675, 686 (Mo. banc 1998).

The findings and conclusions of the motion court are not clearly erroneous. ... Point denied.

Resp. Ex. 9 at 5-6.

The court has set forth, above, federal law applicable to claims of ineffective assistance of counsel, including law applicable to claims of ineffective assistance of counsel based on the failure to call a witness. Additionally, under federal law, counsel is not ineffective for not calling a witness whose testimony would have been cumulative. Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir. 2006) (citing Bucklew v. Luebbers, 436 F.3d 1010 (8th Cir.2006); Schlup v. Armontrout, 941 F.2d 631, 639 (8th Cir. 1991); Hall v. Luebbers, 296 F.3d 685, 694 (8th Cir. 2002)).

As discussed above, upon considering the issue of Petitioner's Ground 3, the Missouri appellate court considered and applied the two-pronged test of Strickland and concluded that Petitioner did not meet this test. The Missouri appellate court further that, because defense counsel emphasized, on cross-examination, the discrepancy regarding the robber's clothing, Officer Paulino's testimony regarding the robber's clothing would have been cumulative. As such, the court finds that the decision of the Missouri appellate court regarding the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law to the facts of Petitioner's case. See Strickland, 466 U.S. at 687-90; Winfield, 460 F.3d at 1033; Kenley, 937 F.2d at 1304; Hanes, 240 F.3d at 698. The court finds, therefore, that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

# VI.
## MOTIONS FOR TRANSCRIPTS

Before the court are two Motions filed by Petitioner in which Motions Petitioner asks the court to order Respondent to furnish to him transcripts of the guilty plea hearings of his co-defendants. To the extent Petitioner's Motions suggest that his co-defendants did not testify that Petitioner participated in the armed robbery of the Travelodge, the Missouri appellate court held that both of Petitioner's co-defendants, "in their respective guilty plea hearings, stated under oath they acted with [Petitioner] in the armed robbery." Resp. Ex. 4 at 5. This factual finding carries a presumption of correctness that can be "rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).

Petitioner also contends that if his co-defendants did testify that he participated in the robbery, they did so in order to secure their guilty pleas and that they would now testify that Petitioner did not participate. First, in Ground 2, as discussed above, Petitioner alleges that he received ineffective assistance of counsel because counsel failed to call Petitioner's co-defendants as witnesses at Petitioner's trial. In support of Ground 2, Petitioner argues, as he did in State court, that, had his co-defendant's been called as witnesses at his trial, he would have been found innocent. As further discussed above, in regard to Ground 2, counsel is not constitutionally ineffective for failing to call co-defendants who implicated a defendant through their own sworn testimony. Thus, the transcripts which Petitioner seeks are not relevant to Ground 2. Second, the testimony of Petitioner's co-defendants at their guilty plea hearings is not relevant to the issues of Petitioner's Grounds 1 or 3, which address, respectively, the admission of a surveillance videotape and counsel's failure to call a police officer. Third, assuming, arguendo, that Petitioner's co-defendants would testify that Petitioner did not participate in the robbery, as set forth above, the victim, Mr. Chowdary unequivocally identified Petitioner not only as a participant in the robbery but as the person who

pulled the gun and pointed the gun in his face. Additionally, a surveillance videotape of the robbery was properly admitted into evidence. Under such circumstances, Petitioner's being provided the transcripts of his co-defendant's plea hearings would not assist Petitioner in establishing that he is entitled to relief pursuant to § 2254. The court finds, therefore, that Petitioner's Motions should be denied.

## VII.
## CONCLUSION

For the reasons stated above, the court finds the issue raised in Ground 1 of Petitioner's § 2254 Petition is not cognizable pursuant to federal habeas review; that, alternatively, Ground 1 is without merit; and that Grounds 2 and 3 are without merit. As such, the court finds that Petitioner's § 2254 Petition for habeas relief should be denied in its entirety. The court also finds that Petitioner's Motions in which he asks the court to order Respondent to provide him with transcripts of his co-defendant's guilty plea hearings should be denied.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Petitioner in his § 2254 Petition is **DENIED**, in its entirety; Doc. 1

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability will be **DENIED**;

**IT IS FINALLY ORDERED** that Petitioner's Motions in which he asks the court to order Respondent to provide him with transcripts of his co-defendant's guilty plea hearings are **DENIED**. Docs. 10, 14.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this <u>15th</u> day of July, 2011.